UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| RHONDA TRIMBLE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:05-cv-1012-LJM-WTL |
| | ) | |
| SECRETARY OF TREASURY, | ) | |
| DEPARTMENT OF TREASURY, | ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Rhonda Trimble ("Trimble"), filed this action under 42 U.S.C. § 2000 against her employer, the Secretary of Treasury ("Defendant"), alleging gender discrimination for failure to promote.  This matter comes before the Court on Defendant's Motion for Summary Judgment. For the reasons state herein, the Court **GRANTS** Defendant's Motion for Summary Judgment.

## I.  BACKGROUND

Trimble began working for Defendant in March 1988 as a Taxpayer Service Representative/GS04.  Trimble Aff. ¶ 2.  She was awarded several promotions and in the year 2000, Trimble was promoted to the position of Senior Associate Advocate.  *Id.* ¶ 2-5; Trimble Dep. at 30-31.

In 2002, a temporary detail in the position of a Supervisory Associate Advocate became available.  Trimble Dep. at 53; Sheely Dep. at 30.  Trimble applied and was awarded this detail by Karen Sheely ("Sheely").  Trimble Dep. at  53; Sheely Dep. at 31-32. The detail lasted for 112 days. Sheely Dep. at 33.  During this detail, Sheely completed evaluations of Trimble's performance.

Sheely Dep. at 35-36, 39-40; Sheely Dep. Ex. 8.  Both of these evaluations were positive and praised Trimble's performance.  *Id.*

Trimble alleged that after this detail was assigned but before it began, Sheely informed her that Trimble would never be promoted to manager as long as her husband was a manager in the office.  Trimble Aff. ¶ 8; Trimble Dep. at 88, 99.

At the end of 2003, a Supervisory Associate Advocate position became vacant.  Trimble Dep. at 52; Sheely Dep. at 42.  Several employees applied for this position, including Trimble. Trimble Dep. at 52.

The application process began and the applications were ranked by Richard A. Runkle, a Taxpayer Advocate Service Senior Analyst, to determine the most qualified candidates.  Goldstein Decl. ¶ 5; Sheely Dep. at 95-96.  Four applicants were chosen for the best qualified list ("BQL"): Greg Porter ("Porter"), Janina "Nina" Smith ("Smith"), Tracy Green ("Green"), and Trimble. Sheely Dep. Ex. 15; Trimble Dep. at 112.  Porter and Green are men, Smith and Trimble are women. Trimble Dep. 113-114.

Elayne Goldstein ("Goldstein"), at that time the Taxpayer Advocate Service Area 4 Director, was the selecting official.  Goldstein Decl. ¶ 3; Sheely Dep. at 71.  It is normal procedure for the immediate manager over a supervisory vacancy to form an interview panel and conduct interviews of BQL candidates.  Goldstein Decl. ¶ 6.  Sheely was the immediate supervisor over the vacancy in question and was instructed to form an interview panel and conduct interviews of the four BQL candidates.  *Id.*  Goldstein also instructed Sheely that following the interviews, the interview panel should follow normal procedure and attempt to reach a consensus regarding the best candidate for selection.  *Id.* ¶ 7.  Sheely would also act as the recommending official and communicate the panel's

recommendation to Goldstein. *Id.* Goldstein instructed that the recommendation was to be based solely on the interview panel's evaluation of the quality of each candidate's interview. *Id.*

Selma Taylor ("Taylor") and Patrick McCammon ("McCammon") were selected to be part of the interview panel along with Sheely. Sheely Dep. at 64. Sheely drafted the interview questions to be used in the BQL candidate interviews. *Id.* at 66. The responsibilities of the interview panel members were to interview collectively the four BQL candidates, to evaluate individually the quality of each candidate's interview, and attempt to reach a consensus regarding the candidate to recommend for selection. Taylor Decl. ¶ 4; McCammon Decl. ¶ 4.

The interviews were conducted on February 20, 2004. Trimble Dep. at 126. Sheely, Taylor, and McGammom were present at Trimble's interview. *Id.* at 126. All three members of the interview panel asked Trimble questions during the interview. *Id.* at 127. Trimble was nervous during her interview and drew a blank to a question that addressed an important concept. *Id.* at 127, 129, 132, 133.

After the interviews of the four BQL candidates were completed, the interview panel recommended Green for the position. Sheely Dep. at 71. Sheely notified Goldstein of the panel's recommendation by phone and later faxed summaries prepared by the interview panel to Goldstein. *Id.* at 72, 73. Goldstein concluded that the interview and summary notes supported the panel's recommendation to promote Green. Goldstien Decl. ¶ 9. It is undisputed that Goldstein believed Green was the best candidate for the position. Trimble Dep. at 155; Goldstein Decl. ¶ 10.

It is undisputed that the interview panel's recommendation was based solely on interview performance. Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. at 6 ("Pl.'s Br. in Opp'n"); Sheely Dep. 61. Sheely testified that the recommendation is always based on interviews if interviews have been held. *Id.* at 62. This policy was implemented in response to the application and interview procedure

3

used in selecting Trimble's husband, James Trimble ("J. Trimble") for the position of Supervisory Associate Advocate in 1999. *Id.* at 77, 97-98.  In the 1999 interview procedure, J. Trimble was selected for promotion although he gave a poor interview.  *Id.* at 79.

After the selection had been made, Sheely invited Trimble into her office and informed her that she had not been selected.  Trimble Dep. at 181.  Sheely told Trimble that there were parts of her interview that she could have done differently.  *Id.*  Sheely then asked Trimble if she would like to discuss it further.  *Id.*  Trimble refused because she was too upset and she believed that the basis for not promoting her was based on facts other than her interview and other than her skills and qualifications.  *Id.* at 182.

## II. <u>STANDARDS</u>

### A. SUMMARY JUDGMENT

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990).  Motions for summary judgment are governed by Federal Rule of Civil Procedure 56 (c) ("Rule 56(c)"), which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth

specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996).  It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which she relies.  *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).  When the moving party has met the standard of Rule 56, summary judgment is mandatory.  *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party.  *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996).  The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment.  *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996).  Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute.  *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party."  *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

## B. GENDER DISCRIMINATION

A gender discrimination claim can survive summary judgment if the plaintiff presents either direct or circumstantial evidence of discrimination or indirect evidence that satisfies the three-part burden-shifting test outlined in the Supreme Court's decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Gender discrimination is established through direct evidence when the plaintiff can show "either an acknowledgment of discriminatory intent or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007).

The three-part burden shifting test outlined in *McDonnell Douglas* requires that a plaintiff seeking to use indirect evidence to establish gender discrimination must prove a prima facie case by showing "that (1) she is a member of a protected class; (2) she applied for, and was qualified for an open position; (3) she was rejected; and (4) the employer filled the position with a person not in her protected class, or the position remained open." *Howard v. Lear Corp. EEDs & Interiors*, 234 F.3d 1002, 1006 (7th Cir. 2000). *See also Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 454 (7th Cir. 1999).

If the plaintiff establishes these elements, a prima facie case is established and the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. *See also Mills*, 171 F.3d at 454.

Once an employer presents such a reason, the burden then shifts back to the plaintiff to show that the employer's "stated reason for respondent's rejection was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804. *See also Mills*, 171 F.3d at 454. The discrimination alleged must be intentional, thus "the pretext inquiry focuses on whether the employer's stated reason was honest, not whether it was accurate." *Mills,* 171 F.3d at 458. However, to survive summary judgment,

"the non-moving party, in this case the plaintiff . . . must only produce evidence from which a rational factfinder could infer that the company lied about its proffered reason his dismissal." *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (7th Cir. 1994). *See also Mills*, 171 F.3d at 458.  Pretext can be established with a showing that the reason articulated is unworthy of credence.  *Gordon v. United Airlines, Inc,.* 246 F.3d 878, 888 (7th Cir. 2001).  A plaintiff may also establish pretext by providing "evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the [adverse employment  action] in question, or were insufficient to motivate the [adverse employment action]." *Testerman v. EDS Tech. Prods. Corp.*, 98 F.3d 297, 303 (7th Cir. 1996).

## III.  DISCUSSION

Trimble does not assert that she has direct or circumstantial evidence of discrimination.  As such, Trimble must satisfy the three-part *McDonnell Douglas* test to survive summary judgment.

### A. TRIMBLE'S PRIMA FACIE CASE

To establish a prima facie case on indirect evidence, Trimble must show that (1) she is a member of a protected class; (2) she applied for and was qualified for an open position; (3) she was rejected; and (4) the position of Supervisory Associate Advocate was filled with a person not in her protected class, or the position remained open.

Trimble satisfies all four elements. As a female, she is a member of a protected class. She applied for the open position of a Supervisory Associate Advocate in December 2003.  Trimble Dep. at  52.  Sheely testified that Trimble was qualified for the position, and Trimble was selected as one the best qualified candidates.  Sheely Dep. at  45; Sheely Dep. Ex.15.  But, Trimble was rejected for

this position; Green was chosen instead.  Sheely Dep. at 76; Sheely Dep. Ex. 15.  Green is a male and not a person in Trimble's protected class.  Trimble Aff. ¶ 13.  Therefore, Trimble has established a prima facie case of gender discrimination.

### B. DEFENDANT'S LEGITIMATE REASON TO REJECT TRIMBLE FOR PROMOTION

The burden now shifts to Defendant to articulate a legitimate, nondiscriminatory reason for why Trimble was not selected for the position of Supervisory Associate Advocate.  Defendant claims that Trimble was not chosen for the position because she did not give the best interview. Taylor Decl. ¶ 9; McCammon Decl. ¶ 7, 10; Goldstein Decl. ¶ 8-11; Sheely Dep. at 71.  Taylor felt that Trimble did not give the best interview because "her responses did not indicate extensive experience in working in collaboration with others and/or in helping to develop other employees" and because "Trimble's answer to question [three] regarding the IRS Business Measurement System and its relationship to TAS was not on point. [Trimble] initially indicated that she did not know about the Business Measurement System and/or its relationship to TAS."  Taylor Decl. ¶ 9. McCammon felt that Trimble did not give the best interview because "[s]he did not demonstrate a recognition of the importance of planning and applying methodology to garner team cohesion and achievement" and "[s]he did not demonstrate recognition of the importance of raising policy or procedural problems for action unless 'they gave her heartburn.'"  McCammon Decl. ¶ 10.

All three interview panel members agreed that Green had the best interview.  Sheely Dep. at  71; Tayor Decl. ¶ 8; McCammon Decl. ¶ 7, 9. Sheely felt that Green had the best interview because "his answers were so tailored to the group at hand" and his answers "were very complete" and "really, really superb," with the exception of one answer that he did not bring together in the

end.  Sheely Dep. at 68-79.  Taylor felt that Green had the best interview because he "gave strong, on point answers to virtually all of the interview questions" and even with the one response that was weaker than the others, "that answer contained all of the essential elements reflecting [Green's] ability to work with co-workers toward a common goal."  Taylor Decl. ¶ 8.  Taylor also noted that Green "demonstrated good negotiating skills, the ability to influence others, analytical skills, and a drive for quality."  *Id.*  McCammon felt that Green had the best interview because he "demonstrated he was ready to assume the position of Supervisory Associate Advocate with minimal preparation and limited oversight," he struck McCammon as "someone who was eager to listen to and work with employees' ideas," and "[Green] evidenced through this interview that he understood the importance of planning and organizing team efforts to reach objectives."  McCammon Decl. ¶ 9.

The Seventh Circuit has stated that a poor interview is a legitimate, nondiscriminatory reason to not promote an employee.  *Baron v. City of Highland Park*, 195 F.3d 333, 340-41 (7th Cir. 1999).  Here, Trimble's employer claims that her poor interview was the reason she was not chosen for promotion to the Supervisory Associate Advocate position.  This is a legitimate, nondiscriminatory reason to not promote Trimble.

## C. TRIMBLE'S EVIDENCE OF PRETEXT

Upon an employer's articulation of a legitimate, nondiscriminatory reason to not promote its employee, the employee must show that the reason is mere pretext.  "If a legitimate explanation is provided, the presumption of discrimination dissolves, and the burden shifts back to the plaintiff to show that the employer's proffered reasons are a pretext for . . . discrimination."  *Sirvidas v. Commonwealth Edison Co.*, 60 F.3d 375, 378 (7th Cir. 1995).  Trimble must squarely rebut the

9

reason articulated by her employer to prove pretext.  *See Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 349 (7th Cir. 1997).  Specifically, Trimble must show there is a genuine issue of material fact as to whether Defendant honestly believed its stated justification for not promoting her.  Thus, "summary judgment is proper where no rational factfinder could believe that the employer lied about its preferred reasons for the [the failure to promote]."  *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, n. 8 (7th Cir. 2005).  A reason may be inferred as pretext if a reasonable person could conclude that the reason articulated was not the true reason for the adverse action.  *See Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 579 (7th Cir. 2003).

Trimble does not directly address whether Defendant lied when the interview panel members and Goldstein stated that they believed Trimble did not give the best interview and that Green did give the best interview.  Instead, she raises four arguments in attempt to show pretext: (1) when Trimble and her husband, J. Trimble,  served on several interview panels, they were not instructed to base their recommendations solely on the candidate's performance during the interview; (2) that Trimble and J. Trimble were similarly situated and J. Trimble was treated more favorably than Trimble; (3) that the alleged comment made by Sheely that Trimble would never be promoted to manager while J. Trimble was a manager in the department was a clear expression of intent by Sheely not to promote Trimble on a factor that had nothing to do with Trimble's ability to do the job; and (4) that the interview panel was strongly influenced by Sheely.  The Court addresses each argument in turn.

First, Trimble uses her husband's experience during an interview process in 1999, and her and her husband's experiences on interview panels generally, as evidence that the 2004 decision not to promote her was not based exclusively on interview performance.  J. Trimble interviewed for the position of Supervisory Associate Advocate in 1999 and was subsequently promoted to that position.

10

Sheely Dep. at 77; J. Trimble Aff. ¶ 3.  Sheely was on the interview panel that recommended J. Trimble for promotion and stated during her deposition that he gave a poor interview.  Sheely Dep. at 78, 79.  Sheely also recalled that a woman, Shirley Boyd ("Boyd"), did well on her interview.  *Id.* at 79.  J. Trimble was promoted to the position and Boyd was not.  *Id.* at 771.  Sheely testified that the decision in J. Trimble's case was not made solely on the interview process.  *Id.* at  80.  Sheely then stated that the process had changed since J. Trimble's interview in 1999 and that Goldstein "was very clear with [her] that when the best qualifieds come in, they are the best qualifieds.  If you are going to interview, your decision needs to be based on what is drawn out in that interview."  *Id.* at 81.  Trimble and J. Trimble claim that they have served on several interview panels since 1999 and they have never been told that recommendations to promote must be made solely on interview performance.  Trimble Aff. ¶ 14; J. Trimble Aff. ¶ 5.  Trimble asserts that if there had truly been a change in practice, she and her husband would have been notified and thus the reason given by Defendant to justify its failure to promote Trimble could not be the real reason.

A review of the relevant parts of J. Trimble's deposition that described the interview panels he had served on indicates that there were occasions where he only had interview performance to base his recommendation on.   For example J. Trimble explained that for several interview panels in which he served, he did not receive any materials prior to the interviews.  J. Trimble Dep. at 42. He was given a list of questions to ask and was told of the time of the interview appointments.  *Id.* The applicants' applications were available to be reviewed in the office where the interviews would take place, but he only occasionally reviewed the materials. *Id.* at 42-43.  After the interviews, the panel discussed the interviews and made recommendations.  *Id.* at 36.  Although Trimble submits this evidence to establish that making recommendations based solely on interview performance is not the usual practice of Defendant, if an interviewer does not review an application prior to an

11

interview and after that interview makes a recommendation for promotion, it seems that the recommendation must be made on interview performance.  From this evidence, it seems that the decision to promote candidates was made, at least occasionally, on the basis of interview performance.  J. Trimble's past experiences serving on interview panels do not raise an issue of material fact that Defendant's reliance on the interviews in Trimble's case was a pretext for discrimination.

In addition, because it is undisputed that the recommendation of the interview panel was based solely on interviews, it follows that this was equally applied to the four candidates that interviewed for the vacant position.  The Eighth Circuit, in *Floyd v. State of Missouri Deptartment of Social Services, Division of Family Services*, 188 F.3d 932 (8th Cir. 1999), has explained that "[a]n employer's failure to follow its own policies may support an inference of pretext."  *Id.* at 937.  Applying this rule to the case before it, the Eighth Circuit concluded that "the record indicates that the departures in policy affected all candidates, not only [the plaintiff].  Thus, they do not support an inference of pretext."  *Id.*  In this case the Court is presented with the same situation.  Even if Defendant's policy had been to consider more than just interview performance when making recommendations to promote, in this case it is undisputed that the 2004 decision of who to promote to the vacant Supervisory Associate Advocate position was based solely on interview performance.  Thus, the departure in policy affected all candidates does not support an inference of pretext.

There is no issue of material fact concerning whether the interview panel's decision to promote Green instead of Trimble was pretext for discrimination.

Next, Trimble argues that she was similarly situated to J. Trimble, that J. Trimble was treated more favorably than her, and that this establishes pretext.  For Trimble to meet her burden to demonstrate that J. Trimble was similarly situated, she

12

> must show that there is someone who is directly comparable to her in all material respects. A court must look at all relevant factors, the number of which depends on the context of the case. Such factors include whether the employees dealt with the same supervisor and were subject to the same standards. It is also relevant whether the employees had comparable experience, education and qualifications, provided that the employer took these factors into account when making the personnel decision in question.

*Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). Trimble argues that she is similarly situated to J. Trimble because they both applied for the Supervisory Associate Advocate Position, Sheely was on both interview panels that made the recommendation of which applicant to promote, and Goldstein was the selecting official in both cases.

In *Burks v. Wisconsin Department of Transportation,* 464 F.3d 744 (7th Cir. 2006), the Seventh Circuit held that the plaintiff failed in her attempt to show that two other employees were similarly situated because neither of them held the same position as plaintiff. *Id.* at 751. The *Burks* court explained: "We have previously stated that, ordinarily, it will not be the case that a plaintiff is similarly situated to another employee when the plaintiff is subordinate to that employee." *Id.* In this case, before his promotion to the Supervisory Associate Advocate, J. Trimble was in the position of Customer Service Group Manager. J. Trimble Aff. ¶ 2. Trimble, before interviewing for the Supervisory Associate Advocate position, was in the position of Senior Associate Advocate. Trimble Aff. ¶ 5. Although the Court recognizes that Trimble was not subordinate to J. Trimble, the evidence shows that J. Trimble was already in a managerial position at the time he applied to the Supervisory Associate Advocate position, while Trimble was not in a managerial position. Thus, Trimble did not hold the same position as J. Trimble when respectively they applied for the Supervisory Associate Advocate position.

Even if this assumption is not correct, in *Patterson* the Seventh Circuit stated that "[i]t is clear that [co-worker] was not similarly situated to [plaintiff] because they reported to different

supervisors and had different levels of experience and job responsibilities." *Patterson*, 281 F.3d at 681. This again supports a conclusion that Trimble was not similarly situated to J. Trimble. Trimble and J. Trimble were in different positions at the time of their applications to the Supervisory Associate Advocate position, and these positions would have different job responsibilities and would likely impart different levels of experience to Trimble and J. Trimble. In addition, there is no evidence that Trimble and J. Trimble reported to the same supervisors.

Furthermore, the number of relevant factors to consider when deciding whether an employee is similarly situated to another depends on the case. *See Patterson,* 281 F.3d at 680. In this case, the Court also finds relevant that there were two positions being filled by the four candidates interviewing with J. Trimble, J. Trimble Dep. at 20, and there was only one position being filled in Trimble's case. Another factor the Court finds relevant is the differences in why J. Trimble and Trimble gave poor interviews. J. Trimble stated that he didn't do a "bang-up job," but he did answer all the questions correctly. *Id.* at 23. Trimble drew a blank to an important question and was able to answer only after being guided by Sheely. Trimble Dep. at 129, 132, 133. The situations are too diverse for a reasonable jury to conclude that Trimble was similarly situated to J. Trimble.

There is no genuine issue of material fact that Trimble was similarly situated to J. Trimble at the time of their respective applications to the Supervisory Associate Advocate position. As such, no inference of pretext arises.

Trimble also argues that two years prior to the interview process in question, Sheely allegedly said that she would never promote Trimble while J. Trimble was a manager in the department. Trimble Aff. ¶ 8; Trimble Dep. at 88, 99. However, Trimble does not explain how this is evidence of gender discrimination. In her brief, Trimble only asserts that "[i]t could be argued that [this] statement is an expression of an intent to discriminate against women," but never

14

elaborates on how the statement is an expression of an intent to discriminate against women nor cites any supportive authority.  Pl.'s Br. in Opp'n at 15.  The Court fails to see how this comment would express an intent to discriminate against women.  In fact, Trimble admits that if at the time this comment was made she had been in her husband's managerial position, it is possible that Sheely would not have wanted to promote her husband in order to avoid having two married managers. Trimble Dep. at 109-110.  There is no genuine issue of material fact of whether this comment expresses an intent to discriminate against women.  A reasonable jury could not find such an intent and, thus, it does not establish an inference of pretext.

Finally, Trimble argues that the interview panel and Goldstein were strongly influenced by Sheely and that Goldstein simply accepted the recommendation of the interview panel.  Specifically, Trimble asserts that "[c]ertainly, [Sheely's] motives could have tainted the interview panel" and "[c]learly, knowingly or not [Goldstein] was simply a conduit for [Sheely's] motives."  Pl.'s Br. in Opp'n at 16.

It is true that the motives of a subordinate employee can be imputed to the decisionmaker when the decisionmaker acts as the conduit of the subordinate's motives.  In *Willis v. Marion County Auditor's Office*, 118 F.3d 542 (7th Cir. 1997), the Seventh Circuit recognized that "there can be situations in which the forbidden motive of a subordinate employee can by imputed to the employer because, under the circumstances of the case, the employer simply acts as the 'cat's paw' of the subordinate."  *Id.* at 547.  The *Willis* court further explained that "this situation may occur in an instance in which a subordinate, by concealing relevant information from the decisionmaker, is able to manipulate the decisionmaking process and to influence the decision."  *Id.*

In this case, Trimble has not presented any evidence that Sheely had such a "forbidden motive" beyond a statement made more almost two years prior to Trimble's application to the

Supervisory Associate Advocate position.  As discussed above, this statement, standing alone, does not evidence gender discrimination.  Without this forbidden motive, there is nothing illegal to impute to Goldstein.  Further, there is no evidence that Sheely concealed relevant information from Goldstein.  It is undisputed that Sheely contacted Goldstein after the interviews and they discussed the questions asked during the interviews and the interview panel's assessment of the quality of each candidate's interview.  Goldstein Decl. ¶ 8.  It is also undisputed that Goldstein requested and received the interview and summary notes prepared by the panel after her conversation with Sheely. *Id.* at ¶ 9.

There is no genuine issue of material fact that Sheely unlawfully influenced the interview panel or that Goldstein acted as a "cat's paw" of her subordinate.  Stating the Sheely's motives "could have" influenced the interview panel without providing evidence of these motives or evidence that Sheely influenced the panel does not create a genuine issue of material fact that can withstand summary judgment.  "[A] reason cannot be proved to be a pretext for *discrimination* unless is shown *both* that the reason was false, *and* that discrimination was the real reason."  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original).

In conclusion, Trimble fails to meet her burden of proof concerning whether Defendant's articulated legitimate, nondiscriminatory reason is merely pretext and is untrue.

## V.  **CONCLUSION**

For the foregoing reasons, Defendant's, Secretary of Treasury, Motion for Summary Judgment is **GRANTED**.

IT IS SO ORDERED this 11th day of June, 2007.


LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana


Electronically distributed to:

Debra G. Richards                              Gregory A. Stowers
UNITED STATES ATTORNEY'S OFFICE                STOWERS & WEDDLE PC
debra.richards@usdoj.gov                       gstowers@swh-law.com

17